[Cite as *Progressive Macedonia, L.L.C. v. Shepherd*, 2021-Ohio-792.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| PROGRESSIVE MACEDONIA, LLC<br>d.b.a. AVENUE AT MACEDONIA, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellant, | : | **CASE NO. 2020-T-0036** |
| | : | |
| - vs - | : | |
| | : | |
| DAVID A. SHEPHERD, GUARDIAN OF<br>ESTATE FOR VICTOR A.E. SANSONE, | : | |
| | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Probate Division.
Case No. 2019 CVA 0033.

Judgment: Affirmed.


*William Cory Phillips*, Rolf Goffman Martin Lang LLP, 30100 Chagrin Blvd., Suite 350, Cleveland, Ohio 44124 (For Plaintiff-Appellant).

*Susan M. Audey* and *Victoria L. Vance*, Tucker Ellis LLP, 950 Main Avenue, Suite 1100, Cleveland, Ohio 44113-7213 (For Defendant-Appellee).

*Douglas J. Neuman*, Neuman Law Office, LLC, 761 North Cedar Avenue, Suite 1, Niles, Ohio 44446 (Guardian ad litem).


MARY JANE TRAPP, P.J.

{¶1} Appellant, Progressive Macedonia, LLC d.b.a. Avenue at Macedonia ("Macedonia"), appeals the judgment of the Trumbull County Court of Common Pleas, Probate Division, which adopted a magistrate's decision and assessed to Macedonia fees

for services rendered by Douglas J. Neuman ("Mr. Neuman"), as guardian ad litem ("GAL") for Victor A.E. Sansone ("Mr. Sansone").

{¶2} The underlying matter involved Macedonia's motion to remove appellee, David A. Shepherd ("Mr. Shepherd"), as guardian of Mr. Sansone's estate and to order Mr. Shepherd to pay to the guardianship estate the debt caused by his alleged neglect of duty.

{¶3} Macedonia contends that the trial court erred in ordering it to pay the GAL fees because (1) it was not a party to the guardianship removal proceeding; (2) the trial court did not have jurisdiction to render judgment against it; (3) the trial court did not serve it with, or provide notice of, any demand for payment of GAL fees; and (4) the trial court's judgment is against public policy.

{¶4} After a careful review of the record and pertinent law, we find as follows:

{¶5} (1) Since this matter involves the trial court's adoption of a magistrate's decision, Macedonia was required to file timely objections to the magistrate's decision in order to preserve its arguments on appeal. By failing to do so, Macedonia is prohibited from raising on appeal any arguments it failed to preserve, except for a claim of plain error.

{¶6} (2) Macedonia has not made a plain error argument on appeal, and the plain error doctrine may not be applied to reverse a civil judgment to allow litigation of issues which could easily have been raised and determined in the trial court.

{¶7} (3) However, based on our review of Macedonia's jurisdictional arguments, we find that the trial court's alleged errors did not implicate its jurisdiction. Therefore, its judgment was not void.

{¶8} Thus, we affirm the judgment of the Trumbull County Court of Common Pleas, Probate Division.

**Substantive and Procedural History**

{¶9} In July 2019, Macedonia filed a document in the trial court entitled "Petitioner's Motion to Remove David Shepherd as Guardian of Estate and to Issue Order of Payment (Request for Evidentiary Hearing)." As the case caption, Macedonia set forth "In the Matter of: Guardianship of Victor A.E. Sansone" and the case number relating to Mr. Sansone's guardianship estate. Below the case caption, Macedonia set forth its name and address, identifying itself as "Petitioner," and Mr. Shepherd's name and address, identifying him as "Respondent." Macedonia stated in its motion that there was proper jurisdiction and venue and set forth factual allegations in numbered paragraphs.

{¶10} A summary of Macedonia's factual allegations are as follows:

{¶11} Mr. Sansone was a patient at Macedonia's long-term care facility in Summit County, Ohio, since May 2018. He was a beneficiary of the Medicaid program, which paid for most of his medical care needs that Macedonia provided. At some point, Mr. Sansone was terminated from the Medicaid program due to his accumulation of funds that placed him over the asset/resource limit for Medicaid eligibility, resulting in a balance owed to Macedonia in excess of $70,000. Macedonia issued a discharge notice, but discharge could not occur because a Medicaid application was subsequently filed. This application was denied because of excess of funds. Thus, Mr. Shepherd failed to act as required by law.

{¶12} Macedonia requested that the trial court remove Mr. Shepherd as guardian and order him to repay the successor guardian the damages or debt resulting from his

3

alleged negligent conduct, including an order to surcharge Mr. Shepherd's guardian bond should payment not be made. Macedonia further requested an evidentiary hearing on its motion.

{¶13} The trial court opened a separate removal proceeding with a new case number and issued a summons to Mr. Shepherd. Mr. Shepherd appeared through counsel and filed an answer.

{¶14} It appears that the trial court appointed Mr. Neuman, an attorney, as GAL to investigate the allegations that Macedonia raised in its motion.[1] Mr. Neuman filed a motion to intervene in the removal proceeding and a report.

{¶15} According to Mr. Neuman's report, Mr. Sansone's Medicaid benefits were discontinued as a result of net proceeds from the sale of his former residence. Mr. Shepherd spent down the proceeds in accordance with Medicaid regulations, and Mr. Sansone was re-qualified for Medicaid benefits. Mr. Sansone's requalification was applied retroactively so that his financial obligation to Macedonia would be satisfied. Mr. Neuman concluded that Mr. Shepherd had acted diligently and in the best interest of the ward and that Macedonia's motion was not "well-founded."

{¶16} The trial court issued a judgment entry granting Mr. Neuman's motion to intervene and stated that he "shall be entitled to compensation and expenses for serving as Guardian ad Litem herein upon the approval of a written application submitted to the Court." Mr. Neuman subsequently filed an answer.

{¶17} The trial court held a status conference, where Macedonia and Mr.

---

1. The record before us does not contain a judgment entry appointing Mr. Neuman or defining his requested services. However, the record on appeal only relates to the guardian removal proceeding and not proceedings involving Mr. Sansone's guardianship estate.

4

Shepherd appeared by counsel and where Mr. Neuman appeared on his behalf. The trial court's subsequent judgment entry indicates that Mr. Shepherd's counsel and Mr. Neuman raised the issue of whether Macedonia had standing to bring the action. The trial court set forth a briefing schedule on this issue, as well as a discovery deadline, and a trial date.

{¶18} Mr. Neuman filed a notice of withdrawal of his objection to Macedonia's standing.

{¶19} Mr. Shepherd filed a brief and position statement arguing that Macedonia, as a creditor, lacked standing to advocate for his removal and seek to hold him liable but that it may file an exception to the guardianship's account for any balance due.

{¶20} Macedonia filed a brief and position statement arguing that it had standing as an "interested party" to fully participate in resolving the issue before the trial court.

{¶21} Mr. Sansone died in October 2019. Mr. Shepherd filed a motion to dismiss Macedonia's motion to remove/order payment as moot. Macedonia filed a motion to dismiss and/or withdraw its motion to remove/order payment and indicated it had filed an exception to the guardian's final account, which would "resolve any claim regarding the Guardian's potential liability for the debt owed to Petitioner." The trial court issued a judgment entry granting Macedonia's motion, dismissed Macedonia's motion to remove/order payment, and assessed costs to Macedonia.

{¶22} In February 2020, Mr. Neuman filed a motion for GAL fees for legal services rendered in the amount of $2,470 and attached an itemized statement. He requested payment from the trial court's "indigent fund" because there were no funds available from Mr. Sansone to pay the fees.

5

{¶23} On March 12, 2020, the magistrate issued a report and decision. The magistrate found that Mr. Neuman's requested fees were reasonable, appropriate, and beneficial to Mr. Sansone; it was necessary to appoint a GAL to investigate the allegations raised in Macedonia's motion to remove/order payment; and Macedonia dismissed the matter prior to adjudication. The magistrate determined that as "the party seeking relief herein," it was appropriate for Macedonia "to bear all costs for the guardian ad litem." Therefore, it recommended that Macedonia pay $2,470 to Mr. Neuman within 14 days.

{¶24} The magistrate's decision contained the required notice stating that "a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 52(D)(3)(a)(ii), unless the party timely and specifically objects to that finding or legal conclusion as required by Civ.R. 53(D)(3)(b)."

{¶25} On the same day, the trial court issued a judgment entry adopting the magistrate's decision, reiterating the magistrate's findings and determination as its own, and converting the magistrate's recommendation into an order. The record of the removal proceeding does not reflect that Macedonia filed objections to the magistrate's decision.

{¶26} Macedonia appealed the trial court's judgment and raises the following sole assignment of error:

{¶27} "The probate court committed error when it ordered Appellant ("Macedonia") to pay the costs and fees of the guardian ad litem when Appellant was not a party to the in rem guardianship proceedings and without any notice to Appellant of a demand and without providing Appellant an opportunity to object (T.D. 22)."

6

**Standard of Review**

{¶28} This case involves the trial court's adoption of a magistrate's decision pursuant to Civ.R. 53.

{¶29} Civ.R. 53 authorizes courts of record to appoint magistrates to assist them. *State ex rel. Franks v. Ohio Adult Parole Authority*, 159 Ohio St.3d 435, 2020-Ohio-711, 151 N.E.3d 606, ¶ 9; Civ.R. 53(A) and (C)(1). When a matter is referred to a magistrate for decision, the magistrate is required to prepare a written decision. *Franks* at ¶ 9; Civ.R. 53(D)(3)(a)(i) and (iii).

{¶30} A party may file written objections to a magistrate's decision within 14 days of its filing. Civ.R. 53(D)(3)(b)(i).[2] An objection to a factual finding, whether or not specifically designated as such, shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding. Civ.R. 53(D)(3)(b)(iii). The objecting party has 30 days from the time the objections are filed to file the hearing transcript. *Id*. The objecting party may also seek leave of court to supplement objections if the objections were filed before the transcript had been filed. *Id*.

{¶31} A magistrate's decision is not effective unless adopted by the court. Civ.R. 53(D)(4)(a). Whether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification. Civ.R. 53(D)(4)(b). If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections by undertaking an "independent review" of the objected matters to

---

2. Since the magistrate's decision was issued on March 12, 2020, the applicable deadlines in Civ.R. 53 were tolled pursuant to the Supreme Court of Ohio's order in *In re Tolling of Time Requirements Imposed by Rules Promulgated by the Supreme Court and Use of Technology*, 158 Ohio St.3d 1516, 2020-Ohio-2975, 145 N.E.3d 299.

7

ascertain whether the magistrate properly determined the factual issues and appropriately applied the law. Civ.R. 53(D)(4)(d).

{¶32} In addition to adopting, rejecting, or modifying a magistrate's decision, the court shall also enter a judgment or interim order. Civ.R. 53(D)(4)(e). The court may enter a judgment during the 14 days permitted for the filing of objections or after the 14 days have expired. Civ.R. 53(D)(4)(e)(i). If the court enters a judgment during the 14 days, the timely filing of objection operates as an automatic stay until the court disposes of the objections and vacates, modifies, or adheres to its previously entered judgment. *Id.*

{¶33} As the Supreme Court of Ohio has explained, "[a] party's failure to file objections to a magistrate's decision has consequences." *Franks* at ¶ 9. "'Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law * * *, unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).'" *Id.*, quoting Civ.R. 53(D)(3)(b)(iv).

{¶34} "Thus, in a civil case before a trial court, when a party fails to file objections to a magistrate's decision, that party waives the right to later assign as error on appeal the court's adoption of any of the magistrate's findings and conclusions." *Id.*

{¶35} There is no dispute that Macedonia did not file objections to the magistrate's decision in the removal proceeding. Macedonia states in its appellate brief that it filed an objection to the magistrate's decision in the guardianship estate proceeding rather than the removal proceeding, and the trial court overruled it on that basis. Macedonia does not assert that its actions complied with Civ.R. 53(D)(3)(b).

8

{¶36} Instead, Macedonia contends that the applicable standard of review is de novo, citing this court's decision in *In re Guardianship of Tracey*, 11th Dist. Trumbull No. 2006-T-0108, 2007-Ohio-2310. However, *Tracey* is procedurally distinguishable, as it did not involve the trial court's adoption of a magistrate's decision under Civ.R. 53. *See id.* at ¶ 1, ¶ 14.

{¶37} Macedonia further contends in its reply brief that a judgment rendered without personal jurisdiction is void and that this issue cannot be waived, citing the Supreme Court of Ohio's decision in *Lingo v. State*, 138 Ohio St.3d 427, 2014-Ohio-1052, 7 N.E.3d 1188.

{¶38} However, *Lingo* involved the issue of a court's *subject matter jurisdiction*. *See id.* at ¶ 25. The court has specifically held that "'the requirement that a court have personal jurisdiction over a party is a waivable right * * *.'" *Preferred Capital, Inc. v. Power Eng. Group, Inc.*, 112 Ohio St.3d 429, 2007-Ohio-257, 860 N.E.2d 741, ¶ 6, quoting *Kennecorp Mtge. Brokers, Inc. v. Country Club Convalescent Hosp., Inc.*, 66 Ohio St.3d 173, 175, 610 N.E.2d 987 (1993).

{¶39} In addition, this court has held that "'[i]f a party enters a case, makes no objection to jurisdiction, and asks the court to act on its behalf in some substantive way, it will be held to have waived further objection.'" *Promotional Prods. Group, Inc. v. Sunset Golf, LLC*, 11th Dist. Portage No. 2009-P-0041, 2010-Ohio-3806, ¶ 84, quoting *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir.1972).

{¶40} Accordingly, pursuant to Civ.R. 53, Macedonia is prohibited from raising on appeal any arguments it failed to preserve by filing objections to the magistrate's decision, except for a claim of plain error. *Franks* at ¶ 11; Civ.R. 53(D)(3)(b)(iv).

9

**Plain Error**

{¶41} As the Supreme Court has noted, "[t]he plain error doctrine originated as a criminal law concept." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). "Although in *criminal* cases '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court,' Crim.R. 52(B), no analogous provision exists in the Rules of *Civil* Procedure." (Emphasis sic.) *Id.*

{¶42} Thus, the court has held that "[i]n applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." *Id.*

{¶43} The court has further explained that while invocation of the plain error doctrine is often justified in order to promote public confidence in the judicial process, it is doubtful that the public's confidence in the jury system is undermined by requiring parties to live with the results of errors that they invited, even if the errors go to crucial matters. *Id.* In fact, the idea that parties must bear the cost of their own mistakes at trial is a central presupposition of our adversarial system of justice. *Id.* at 121-122.

{¶44} "Moreover, the determination of a miscarriage of justice is often subjective. Litigants whose cases have been thwarted by statutes of limitations or whose appeals have been dismissed for failure to timely file a notice of appeal may believe they have suffered a miscarriage of justice. Nevertheless, it is well established that failure to follow procedural rules can result in forfeiture of rights." *Id.* at 122.

{¶45} Thus, the court has held that "[t]he plain error doctrine should never be applied to reverse a civil judgment simply because a reviewing court disagrees with the result obtained in the trial court, or to allow litigation of issues which could easily have been raised and determined in the initial trial." *Id.*

{¶46} While Macedonia has not forfeited arguing the existence of plain error on appeal, it has not made a plain error argument in its appellate brief.

{¶47} In addition, Macedonia appears to have invited many of alleged the errors it now appeals. It could have easily raised all of these issues in the trial court, by either objecting during the removal proceeding or by filing objections to the magistrate's decision, which it failed to do. According to the Supreme Court of Ohio, we are not permitted to the apply the plain error doctrine to reverse a civil judgment under such circumstances. *Goldfuss* at 122.

{¶48} However, since Macedonia alleges that the trial court lacked jurisdiction, resulting in a void judgment, we believe that discussion of Macedonia's jurisdictional arguments is warranted.

**Macedonia as a Party**

{¶49} In its first and second issues for review, Macedonia contends that the trial court "unlawfully" designated the removal proceeding as an adversary proceeding rather than as an in rem proceeding, contrary to the Supreme Court of Ohio's decision in *In re Guardianship of Spangler*, 126 Ohio St.3d 339, 2010-Ohio-2471, 933 N.E.2d 1067. By doing so, the trial court "created the appearance that Macedonia was a party thereto." Therefore, the trial court was without "jurisdiction" to find Macedonia, a nonparty, liable for the GAL's fees, making its judgment entry void.

11

{¶50} Macedonia's use of the term "jurisdiction" appears to conflate the separate concepts of subject-matter jurisdiction, personal jurisdiction, and standing. *See Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 18 ("The often unspecified use of this polysemic word can lead to confusion and has repeatedly required clarification as to which type of 'jurisdiction' is applicable in various legal analyses"). Therefore, we set forth the legal standards governing each concept.

### *Jurisdiction*

{¶51} The Supreme Court of Ohio has held that "the question of whether a judgment is void or voidable generally depends on 'whether the Court rendering the judgment has jurisdiction.'" *Miller v. Nelson-Miller*, 132 Ohio St.3d 381, 2012-Ohio-2845, 972 N.E.2d 568, ¶ 12, quoting *Cochran's Heirs' Lessee v. Loring*, 17 Ohio 409, 423 (1848).

{¶52} "'Jurisdiction' means 'the courts' statutory or constitutional power to adjudicate the case.'" *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11, quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), and *Morrison v. Steiner*, 32 Ohio St.2d 86, 87, 290 N.E.2d 841 (1972), paragraph one of the syllabus. The term encompasses jurisdiction over the subject matter and over the person. *Id.*

{¶53} Lack of personal jurisdiction is a defense that may be raised by a *defendant* in a civil case. *In re Z.R.*, 9th Dist. Summit No. 26860, 2016-Ohio-1331, ¶ 8; *see* Civ.R. 3(A) and Civ.R. 4(A) (providing that a civil action is commenced by filing a complaint and serving it on the defendant and requiring the clerk of court to "issue a summons for service upon each *defendant*") (Emphasis added.)

12

{¶54} The Supreme Court of Ohio has explained personal jurisdiction in a civil case as follows:

{¶55} "It is rudimentary that in order to render a valid personal judgment, a court must have personal jurisdiction over the defendant. This may be acquired either by service of process upon the defendant, the voluntary appearance and submission of the defendant or his legal representative, or by certain acts of the defendant or his legal representative which constitute an involuntary submission to the jurisdiction of the court. The latter may more accurately be referred to as a waiver of certain affirmative defenses, including jurisdiction over the person under the Rules of Civil Procedure." *Maryhew v. Yova*, 11 Ohio St.3d 154, 156 (1984).

{¶56} Subject-matter jurisdiction is a court's power to hear and decide a case on the merits. *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 75, 701 N.E.2d 1002 (1998). It does not relate to the rights of the parties, but to the power of the court. *Id.* It focuses on the court as a forum and on the case as one of a class of cases, not on the particular facts of a case or the particular tribunal that hears the case. *State v. Swiger*, 125 Ohio App.3d 456, 462, 708 N.E.2d 1033 (9th Dist.1998). In the civil context, the determinative issue is whether the plaintiff has alleged "'any cause of action cognizable by the forum.'" *Id.*, quoting *Avco Fin. Serv. Loan, Inc. v. Hale*, 36 Ohio App.3d 65, 67, 520 N.E.2d 1378 (10th Dist.1987).

{¶57} The term "jurisdiction" is also used when referring to a court's exercise of its jurisdiction over a particular case. *Pratts* at ¶ 12. This latter use of "jurisdiction" encompasses the trial court's authority to determine a specific case within that class of cases that is within its subject matter jurisdiction. *Id.* It is only when the trial court lacks

13

subject matter jurisdiction that its judgment is void; lack of jurisdiction over the particular case merely renders the judgment voidable. *Id*. Once a tribunal has jurisdiction over both the subject matter of an action and the parties to it, the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred. *Id*. *See Kuchta* at ¶ 19 ("[A]ny error in the invocation or exercise of jurisdiction over a particular case causes a judgment to be voidable rather than void").

{¶58} "Thus, a judgment is generally void only when the court rendering the judgment lacks subject-matter jurisdiction or jurisdiction over the parties; however, a voidable judgment is one rendered by a court that lacks jurisdiction over the particular case due to error or irregularity." *Miller* at ¶ 12.

### *Standing*

{¶59} The concept of "standing" involves whether the plaintiff to a civil action has alleged such a personal stake in the outcome of the controversy that he or she is entitled to have a court hear the case. *Clifton v. Blanchester*, 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414, ¶ 15. Although a court may have subject matter jurisdiction over an action, if a claim is asserted by one who is not the real party in interest, then the party lacks standing to prosecute the action. *Suster* at 77. The lack of standing may be cured by substituting the proper party pursuant to Civ.R. 17 so that a court otherwise having subject matter jurisdiction may proceed to adjudicate the matter. *Id*.

{¶60} According to the Supreme Court of Ohio, "[s]tanding is certainly a jurisdictional requirement; a party's lack of standing vitiates the party's ability to invoke the jurisdiction of a court—even a court of competent subject-matter jurisdiction—over

14

the party's attempted action." *Kuchta* at ¶ 22. "But an inquiry into a party's ability to invoke a court's jurisdiction speaks to jurisdiction over a particular case, not subject-matter jurisdiction." *Id.*

### Removal of Guardians

{¶61} We next set forth the legal standards governing a probate court's removal of a guardian.

{¶62} The Supreme Court of Ohio has held that it is a well-settled principle of law that probate courts are courts of limited jurisdiction and are permitted to exercise only the authority granted to them by statute and by the Ohio Constitution. *Spangler*, *supra*, at ¶ 46. The general grant of jurisdiction to probate courts regarding guardians is comprehensive. *Id.*

{¶63} For instance, R.C. 2101.24(A)(1)(e) provides that "'[e]xcept as otherwise provided by law, the probate court has exclusive jurisdiction: * * * [t]o appoint and remove guardians, conservators, and testamentary trustees, direct and control their conduct, and settle their accounts[.]'" *Id.* at ¶ 47-49, quoting R.C. 2101.24(A)(1)(e). R.C. 2101.24(C) provides that "'[t]he probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code.'" *Id.* at ¶ 51, quoting R.C. 2101.24(C).

{¶64} In addition, the probate court is the "superior guardian," and other guardians must obey all probate orders. *Id.* at ¶ 52. For instance, R.C. 2111.50(A)(1) provides that "'[a]t all times, the probate court is the superior guardian of wards who are subject to its jurisdiction, and all guardians who are subject to the jurisdiction of the court shall obey all orders of the court that concern their wards or guardianships.'" *Id.*, quoting R.C.

15

2111.50(A)(1).

{¶65} The court has held that "[g]uardianship proceedings, including the removal of a guardian, are not adversarial but rather are in rem proceedings involving only the probate court and the ward." *Id.* at ¶ 53. "Because the probate court is the superior guardian, the appointed guardian is simply an officer of the court subject to the court's control, direction, and supervision." *Id.* "The guardian, therefore, has no personal interest in his or her appointment or removal." *Id.* However, "the probate court has the plenary authority to investigate guardians." *Id.* at ¶ 54. It also has "'the inherent power to *sua sponte* consider removal'" of a guardian. *Id.*, quoting *In re Guardianship of Herr*, 5th Dist. Richland No 98-CA-16-2, 1998 WL 666986, *2 (Sept. 2, 1998).

{¶66} Although the Ohio Revised Code does not specify a procedure for doing so, Ohio courts have found that an "interested person" may move for the removal of a guardian. *In re Guardianship of Bakhtiar*, 2018-Ohio-1764, 113 N.E.3d 24, ¶ 37 (9th Dist.). Since there is necessarily no statutory definition of the term "interested person," courts appear to make this determination on a case-by-case basis. *See, e.g., In re Guardianship of Constable*, 12th Dist. Clermont Nos. CA2006-08-058 & CA2006-09-067, 2007-Ohio-3346, ¶ 9 (collecting cases).

{¶67} However, the Supreme Court of Ohio has noted that "an in rem guardianship proceeding, which, at its basic level, involves the court and the ward or potential ward[,] * * * inherently limits any interest or standing of a third party." *In re Guardianship of Santrucek*, 120 Ohio St.3d 67, 2008-Ohio-4915, 896 N.E.2d 683, ¶ 12.

{¶68} With the above principles in mind, we consider the merits of Macedonia's void-judgment argument.

16

## *Analysis*

{¶69} As *Spangler* makes clear, a probate court has "comprehensive" statutory authority regarding guardianships under R.C. 2101.24(A)(1)(e) and plenary authority to investigate guardians under R.C. 2101.24(C). *Id.* at ¶ 46, ¶ 54. Thus, in this case, the trial court had subject matter jurisdiction to consider the allegations that Macedonia raised in its motion.

{¶70} With respect to personal jurisdiction, Macedonia was not a "defendant" under the civil rules. Rather, Macedonia instituted the underlying removal proceeding by filing a motion in which it sought the affirmative relief of Mr. Shepherd's removal as guardian and his personal liability for the alleged debt owed to it.

{¶71} In fact, portions of Macedonia's motion are organized in a manner similar to a civil complaint, as demonstrated below:

**IN THE COURT OF COMMMON PLEAS, PROBATE DIVISIN**
**TRUMBULL COUNTY, OHIO**

**19 CVA033** JUD TRUMB

| | | |
|---|---|---|
| In the Matter of:<br>Guardianship of Victor A.E. Sansone, | ) | Case No. 2015 GDP 0086 |
| | ) | |
| | ) | Judge James A. Fredericka |
| | ) | |
| PROGRESSIVE MACEDONIA<br>LLC D/B/A AVENUE AT<br>MACEDONIA<br>9730 Valley View Road,<br>Macedonia, Ohio 44056, | ) | **PETITIONER'S MOTION TO**<br>**REMOVE DAVID SHEPHERD**<br>**GUARDIAN OF ESTATE AND '**<br>**ISSUE ORDER OF PAYMENT** |
| Petitioner, | ) | (Request for Evidentiary Hearin; |
| v. | ) | |
| DAVID A. SHEPHERD,<br>GUARDIAN OF ESTATE FOR<br>VICTOR A.E. SANSONE<br>185 High Street NE<br>Warren, Ohio 44481, | ) | |
| Respondent. | ) | |

17

{¶72} Thus, below the case caption, Macedonia set forth its name and address, identifying itself as "Petitioner," and Mr. Shepherd's name and address, identifying him as "Respondent." *See* Civ.R. 10(A).

{¶73} Macedonia also made factual allegations in numbered paragraphs. *See* Civ.R. 10(B). Contrary to its arguments on appeal, Macedonia specifically alleged that "jurisdiction and venue are proper."

{¶74} In addition to instituting the removal proceeding, Macedonia participated throughout and appeared before the trial court. When Mr. Shepherd and Mr. Neuman questioned Macedonia's standing at a status conference, Macedonia filed a brief vigorously defending its right to continue participating in the removal proceeding as an "interested party."

{¶75} Therefore, to the extent the trial court erred by designating the removal proceeding as an adversary proceeding and conferring standing to Macedonia, its alleged errors did not implicate its subject matter jurisdiction or personal jurisdiction. Instead, the trial court's alleged errors involved the *exercise* of its jurisdiction, making its subsequent judgment voidable due to alleged error or irregularity, not void. *See Miller, supra*, at ¶ 12; *Kuchta, supra*, at ¶19.

{¶76} Although Macedonia relies on *Spangler* in support of its position, our conclusion is wholly consistent with *Spangler*.

{¶77} In *Spangler*, a county board of developmental disabilities filed a motion in the probate court to remove as ward's parents as guardians and appoint a protective services agency as successor guardian. *Id.* at ¶ 8. The probate court granted the motion to remove on a temporary basis and appointed the agency as temporary guardian. *Id.*

18

**{¶78}** The parents filed a motion to dismiss the board's motion, arguing that it had no statutory authority or standing to file it. *Id.* at ¶ 9. The probate court joined the board as a party to the removal proceeding for the purposes of prosecuting its motion and denied the parents' motion to dismiss. *Id.* at ¶ 10.

**{¶79}** The ward filed a motion to dismiss the board from the case, arguing that it lacked standing to be considered a party. *Id.* The probate court denied the motion, determining that the board was an "interested party." *Id.* at ¶12. Following a hearing, the probate court removed the parents as guardians and ordered that the agency continue as the legal guardian of the ward's person.

**{¶80}** The parents and the ward separately appealed to this court, where we reversed the probate court's judgment in a split decision. *Id.* at ¶ 15.

**{¶81}** The Supreme Court of Ohio accepted the board's discretionary appeal "to determine whether a board of * * * developmental disabilities has the authority and standing to request that a probate court remove a guardian of an incompetent adult and whether the probate court has the authority to conduct proceedings to remove a guardian upon the board's request." *Id.* at ¶ 16.

**{¶82}** The court first reviewed the statutes applicable to the board and concluded that "a county board of developmental disabilities does not have the statutory authority to file a motion in the probate court to remove a guardian." *Id.* at ¶ 17-44. The court next reviewed the statutes governing a probate court's authority over the removal of a guardian. *Id.* at ¶ 46-54. It concluded that "the plenary power of the probate court as the superior guardian allows it to investigate whether a guardian should be removed upon

19

receipt of sufficient information that the guardian is not acting in the ward's best interest." *Id.* at ¶ 58.

{¶83} Thus, *Spangler* involved the board's standing to file a motion to remove a guardian and the probate court's subject matter jurisdiction. The court determined that the board's lack of standing did not deprive the probate court of subject matter jurisdiction over the removal of a guardian. The issue of personal jurisdiction was not involved.

{¶84} Macedonia also cites the Supreme Court of Ohio's decision in *State ex rel. Ballard v. O'Donnell,* 50 Ohio St.3d 182, 553 N.E.2d 650 (1990), for the proposition that "a trial court is without jurisdiction to render judgment or to make findings against a person who is not a party in the court proceedings."

{¶85} In *Ballard*, the plaintiffs brought a breach of contract and fraud action regarding the purchase of their business. *Id.* at 182. Mr. Ballard was the attorney who prepared the documents relating to the incorporation of the entity that was to hold the purchased business assets. *Id.* However, Mr. Ballard was not served with summons, never appeared before the trial court, and was not joined as a defendant. *Id.* At the conclusion of the proceedings, the trial court found that the conduct of Mr. Ballard was "less than professional and potentially criminal" and awarded punitive damages of $100,000 against him and others. *Id.*

{¶86} Mr. Ballard filed for a writ of mandamus, which the Supreme Court of Ohio allowed. *Id.* at 183-184. The court found that the trial court was "without jurisdiction to render judgment against" Mr. Ballard because he "was not a party in the trial court proceedings, was not served summons, and did not appear before the court." *Id.* at 184.

{¶87} *Ballard* is readily distinguishable from the facts of this case, since

Macedonia instituted the removal proceeding, participated throughout, and vigorously defended its right to do so.

### Due Process

{¶88} In his third issue for review, Macedonia contends that it was not served with, or given notice of, any demand for GAL fees prior the trial court's judgment assessing the GAL fees to it. Macedonia argues that the trial court's alleged violation of its due process rights deprived the trial court of personal jurisdiction over Macedonia.

{¶89} In support of its position, Macedonia cites *Northland Ins. Co. v. Poulos*, 7th Dist. Mahoning No. 06 MA 160, 2007-Ohio-7208, where the Seventh District stated that "[p]ersonal jurisdiction is dependent on receiving notice of a suit or waiver of such, and it is true that this aspect of personal jurisdiction implicates the due process clause." *Id.* at ¶ 40.

{¶90} However, Macedonia has quoted *Northland* out of context. Beginning with the next sentence of its opinion, the court stated as follows:

{¶91} "But, this connection does not necessarily make every single due process issue eternally subject to collateral attack. * * * Rather, it seems to us that typical due process violations, other than a lack of personal jurisdiction, are voidable but not void. Otherwise, all entries which could be described as being entered on issues or motions prior to notice and opportunity to be heard would be subject to attack indefinitely without the Civ.R. 60(B)(5) limitation of vacation being sought within a reasonable time." *Id.* at ¶ 40-41.

{¶92} This court has adopted the *Northland* court's position. *See Kent v. CDC-Kent, LLC*, 11th Dist. Portage No. 2017-P-0081, 2018-Ohio-3743, ¶ 39, quoting *Northland*

21

at ¶ 41 ("'[T]ypical due process violations, other than a lack of personal jurisdiction, are voidable but not void'").

{¶93}  Subsequent to *Northland*, the Seventh District expressly held that "a due process violation other than a lack of personal jurisdiction, can only render a judgment voidable and does not render it void."  *Home Fed. S. & L. Assn. of Niles v. Keck*, 2016-Ohio-651, 59 N.E.3d 706, ¶ 51 (7th Dist.).

{¶94}  As demonstrated above, the trial court did not lack personal jurisdiction over Macedonia.  Therefore, any due process errors involving the assessment of GAL fees to Macedonia involved the trial court's *exercise* of its jurisdiction, making its judgment voidable due to alleged error or irregularity, not void.

{¶95}  In sum, the trial court's alleged errors during the removal proceeding did not implicate its subject matter jurisdiction or its jurisdiction over the parties.  Therefore, its judgment was not void, only voidable.

{¶96}  Macedonia's sole assignment of error is without merit.

{¶97}  For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, Probate Division, is affirmed.


CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.